APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–04316–RJL</u>

| | |
|---|---|
| NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES v. NATIONAL PARK SERVICE et al<br>Assigned to: Judge Richard J. Leon<br>Related Case:  1:26–cv–00029–RJL<br>Case in other court:  USCA, 26–05101<br>Cause: 05:0706 Judicial Review of Agency Actions | Date Filed: 12/12/2025<br>Jury Demand: None<br>Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>Jurisdiction: U.S. Government Defendant |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES** | represented by | **Thaddeus A. Heuer**<br>FOLEY HOAG, LLP<br>155 Seaport Boulevard<br>Boston, MA 02210<br>617–832–1187<br>Fax: 617–832–7000<br>Email: <u>theuer@foleyhoag.com</u><br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jack C. Smith**<br>FOLEY HOAG, LLP<br>155 Seaport Boulevard<br>Boston, MA 02210<br>617–832–1119<br>Email: <u>jcsmith@foleyhoag.com</u><br>*ATTORNEY TO BE NOTICED* |
| | | **Matthew Casassa**<br>FOLEY HOAG, LLP<br>155 Seaport Boulevard<br>Boston, MA 02210<br>617–832–1116<br>Email: <u>mcasassa@foleyhoag.com</u><br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Gregory Bestor Craig**<br>FOLEY HOAG LLP<br>1717 K Street, NW<br>Suite 1200<br>Washington, DC 20006<br>202–261–7415<br>Fax: 202–785–6687<br>Email: <u>gcraig@foleyhoag.com</u><br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

**NATIONAL PARK SERVICE**                    represented by    **Mark James Widerschein**
U.S. DEPARTMENT OF JUSTICE
Natural Resources Section
150 M St. NE
Washington, DC 20002
202–532–5803
Email: mark.widerschein@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
DOJ–Enrd
P.O. Box 7611
Washington, DC 20044
202–598–6660
Email: michelle.m.ramus@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
DOJ–Enrd
Environment and Natural Resources
Division
950 Pennsylvania Ave NW
Washington, DC 20530
202–718–0703
Email: adam.gustafson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
DOJ–Civ
950 Pennsylvania Avenue NW
Washington, DC 20530
202–890–9874
Email: brantley.t.mayers@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
DOJ–Civ
1100 L Street NW
Room 12310
Washington, DC 20005
585–694–1124
Email: eitan.r.sirkovich@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
U.S. DEPARTMENT OF JUSTICE

Natural Resources Section
150 M Street, N.E.
Suite 2.900
Washington, DC 20002
202–598–0414
Email: gregory.cumming@usdoj.gov
*TERMINATED: 03/27/2026*
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
1717 Poplar Lane NW
Washington, DC 20012
617–921–9132
Email: yaakov.m.roth@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
U.S. DEPARTMENT OF JUSTICE
ENRD
P.O. Box 7611
Washington, DC 20044–7611
(202) 305–0470
Email: marissa.piropato@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**JESSICA BOWRON**                    represented by    **Mark James Widerschein**
*in her official capacity as ACTING*                    (See above for address)
*DIRECTOR, NATIONAL PARK*                               *LEAD ATTORNEY*
*SERVICE*                                               *ATTORNEY TO BE NOTICED*

                                                        **Michelle M. Nkeng**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Adam R.F. Gustafson**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Brantley Mayers**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Eitan Sirkovich**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gregory Martin Cumming**
                                                        (See above for address)
                                                        *TERMINATED: 03/27/2026*
                                                        *ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN STANWICH**                    represented by    **Mark James Widerschein**
*in his official capacity as*                          (See above for address)
*SUPERINTENDENT, THE WHITE*                            *LEAD ATTORNEY*
*HOUSE AND PRESIDENT'S PARK*                           *ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF THE INTERIOR**      represented by    **Mark James Widerschein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

4

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOUGLAS BURGUM**                                  represented by   **Mark James Widerschein**
*in his official capacity as SECRETARY*                              (See above for address)
*OF THE INTERIOR*                                                    *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Michelle M. Nkeng**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Adam R.F. Gustafson**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Brantley Mayers**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Eitan Sirkovich**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GENERAL SERVICES
ADMINISTRATION**                    represented by **Mark James Widerschein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL J. RIGAS**
*in his official capacity as ACTING
ADMINISTRATOR, GENERAL
SERVICES ADMINISTRATION*

represented by **Mark James Widerschein**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026
ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as PRESIDENT
OF THE UNITED STATES*

represented by **Mark James Widerschein**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**EXECUTIVE OFFICE OF THE PRESIDENT**      represented by   **Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SUSIE WILES**      represented by   **Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF THE EXECUTIVE RESIDENCE**

represented by **Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT DOWNING**

represented by **Gregory Martin Cumming**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle M. Nkeng**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brantley Mayers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eitan Sirkovich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob M. Roth**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/12/2025 | 1 | COMPLAINT against JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP ( Filing fee $ 405 receipt number ADCDC−12131689) filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Summons – National Park Service, # 2 Summons – Jessica Bowron, # 3 Summons – John Stanwich, # 4 Summons – Department of the Interior, # 5 Summons – Douglas Burgum, # 6 Summons – General Services Administration, # 7 Summons – Michael J. Rigas, # 8 Summons – Donald J. Trump, # 9 Civil Cover Sheet)(Craig, Gregory) (Entered: 12/12/2025) |
| 12/12/2025 | 2 | MOTION for Temporary Restraining Order *and Preliminary Injunction* by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Elizabeth S. Merritt, # 3 Declaration of Alison K. Hoagland, # 4 Declaration of Gregory B. Craig, # 5 Exhibit A, # 6 Exhibit B, # 7 Exhibit C, # 8 Exhibit D, # 9 Exhibit E, # 10 Exhibit F, # 11 Exhibit G, # 12 Exhibit H, # 13 Exhibit I, # 14 Exhibit J, # 15 Exhibit K, # 16 Exhibit L, # 17 Exhibit M, # 18 Exhibit N, # 19 Exhibit O, # 20 Exhibit P, # 21 Exhibit Q, # 22 Exhibit R, # 23 Exhibit S, # 24 Exhibit T, # 25 Exhibit U, # 26 Exhibit V, # 27 Exhibit W, # 28 Exhibit X, # 29 Exhibit Y, # 30 Exhibit Z, # 31 Exhibit AA, # 32 Exhibit BB, # 33 Exhibit CC, # 34 Exhibit DD, # 35 Exhibit EE, # 36 Text of Proposed Order for Temporary Restraining Order, # 37 Text of Proposed Order for Preliminary Injunction)(Craig, Gregory) (Entered: 12/12/2025) |
| 12/12/2025 |  | Case Assigned to Judge Richard J. Leon. (zmtm) (Entered: 12/12/2025) |
| 12/12/2025 | 3 | NOTICE of Appearance by Jack C. Smith on behalf of NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES (Smith, Jack) (Entered: 12/12/2025) |
| 12/12/2025 | 4 | SUMMONS (8) Issued Electronically as to All Defendants. (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 12/12/2025) |
| 12/12/2025 |  | NOTICE OF NEW CASE ERROR The following error(s) need correction: Missing summonses− U.S. government. When naming a U.S. government agent or agency as a defendant, you must supply a summons for each defendant & two additional summonses for the U.S. Attorney & U.S. Attorney General. Please submit using the event Request for Summons to Issue. (zmtm) (Entered: 12/12/2025) |

| 12/12/2025 | 5 | REQUEST FOR SUMMONS TO ISSUE *Attorney General Pamela Bondi* filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Summons Jeanine Ferris Pirro, U.S. Attorney for the District of Columbia)(Craig, Gregory) (Entered: 12/12/2025) |
|---|---|---|
| 12/12/2025 | 6 | SUMMONS (2) Issued Electronically as to U.S. Attorney and U.S. Attorney General (mg) (Entered: 12/12/2025) |
| 12/12/2025 | 7 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Thaddeus Alan Heuer, Filing fee $ 100, receipt number ADCDC–12133043. Fee Status: Fee Paid. by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Exhibit A – Declaration of Thaddeus Alan Heuer, # 2 Exhibit B – Proposed Order)(Smith, Jack) (Entered: 12/12/2025) |
| 12/12/2025 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Matthew Francis Casassa, Filing fee $ 100, receipt number ADCDC–12133071. Fee Status: Fee Paid. by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Exhibit A – Declaration of Matthew Francis Casassa, # 2 Exhibit B – Proposed Order)(Smith, Jack) (Entered: 12/12/2025) |
| 12/12/2025 | | MINUTE ORDER. Regarding plaintiff's 2 Motion for a Temporary Restraining Order and Preliminary Injunction, defendants are hereby ORDERED to file a response by Monday, December 15, 2025 at 5:00 PM. The Court will hold a hearing on the motion on Tuesday, December 16, 2025 at 3:30 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 12/12/2025. (lcrjl2) (Entered: 12/12/2025) |
| 12/12/2025 | 9 | NOTICE of Appearance by Michelle M. Ramus on behalf of All Defendants (Ramus, Michelle) (Entered: 12/12/2025) |
| 12/12/2025 | 10 | NOTICE of Appearance by Mark James Widerschein on behalf of All Defendants (Widerschein, Mark) (Entered: 12/12/2025) |
| 12/12/2025 | 11 | NOTICE of Appearance by Gregory Martin Cumming on behalf of JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP (Cumming, Gregory) (Main Document 11 replaced on 12/15/2025) (mg). (Entered: 12/12/2025) |
| 12/15/2025 | 12 | NOTICE of Appearance by Adam R.F. Gustafson on behalf of All Defendants (Gustafson, Adam) (Entered: 12/15/2025) |
| 12/15/2025 | 13 | MOTION for Leave to File *DECLARATION EX PARTE, IN CAMERA* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP. (Widerschein, Mark) (Entered: 12/15/2025) |
| 12/15/2025 | 14 | Memorandum in opposition to re 2 MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 1C, # 5 Exhibit 1D, # 6 Exhibit 2, # 7 Exhibit 2A, # 8 Exhibit 2B, # 9 Exhibit 3, # 10 Exhibit 4, # 11 Exhibit 5)(Widerschein, Mark) (Entered: 12/15/2025) |

| | | |
|---|---|---|
| 12/15/2025 | 15 | ERRATA *Notice* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP re 14 Memorandum in Opposition,,. (Attachments: # 1 Errata Memorandum in Opposition)(Cumming, Gregory) (Entered: 12/15/2025) |
| 12/16/2025 | 16 | NOTICE of Appearance by Marissa Ann Piropato on behalf of All Defendants (Piropato, Marissa) (Main Document 16 replaced on 12/17/2025) (mg). (Entered: 12/16/2025) |
| 12/16/2025 | | MINUTE ORDER. Upon consideration of plaintiff's 7 Motion to Admit Thaddeus Alan Heuer Pro Hac Vice, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Thaddeus Alan Heuer be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Richard J. Leon on 12/16/2025. (lcrjl2) (Entered: 12/16/2025) |
| 12/16/2025 | | MINUTE ORDER. Upon consideration of plaintiff's 8 Motion to Admit Matthew Francis Casassa Pro Hac Vice, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Matthew Francis Casassa be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Richard J. Leon on 12/16/2025. (lcrjl2) (Entered: 12/16/2025) |
| 12/16/2025 | | MINUTE ORDER. Upon consideration of defendants' 13 MOTION for Leave to File Declaration Ex Parte, In Camera, it is hereby ORDERED that the motion is GRANTED. SO ORDERED. Signed by Judge Richard J. Leon on 12/16/2025. (lcrjl2) (Entered: 12/16/2025) |
| 12/16/2025 | | Minute Entry for Motion Hearing held on 12/16/2025 before Judge Richard J. Leon. Oral arguments submitted on Plaintiff's Motion 2 for Temporary Restraining Order and Preliminary Injunction . Court takes matter under advisement. Forthcoming Order. Court Reporter: Lisa Edwards. (zljn) Modified text to correct event type on 12/18/2025 (zljn). (Entered: 12/16/2025) |
| 12/17/2025 | 17 | MEMORANDUM ORDER denying in part and deferring in part 2 Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. See attached Memorandum Order for details. Consistent with the attached Memorandum Order, a hearing on plaintiff's motion for preliminary injunction is set for January 15, 2026 at 3:30 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. The parties shall file supplemental briefing as follows: Plaintiff's brief due December 29, 2025. // Defendants' response due January 8, 2026. // Plaintiff's reply due January 12, 2026. SO ORDERED. Signed by Judge Richard J. Leon on 12/17/2025. (lcrjl2) (Entered: 12/17/2025) |
| 12/17/2025 | 18 | TRANSCRIPT OF MOTION HEARING before Judge Richard J. Leon held on December 16, 2025; Page Numbers: 1–38. Date of Issuance: December 17, 2025. Court Reporter/Transcriber Lisa Edwards, Telephone number (202) 354–3269, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/7/2026. Redacted Transcript Deadline set for 1/17/2026. Release of Transcript Restriction set for 3/17/2026.(Edwards, Lisa) (Entered: 12/17/2025) |
| 12/29/2025 | 19 | AMENDED COMPLAINT against All Defendants filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Summons Executive Office of the President, # 2 Summons Susie Wiles, # 3 Summons Office of the Executive Residence, # 4 Summons Robert B. Downing, # 5 Summons U.S. Attorney General Pamela Bondi, # 6 Summons U.S. Attorney for the District of Columbia Jeanine Pirro)(Smith, Jack) (Entered: 12/29/2025) |
| 12/29/2025 | 20 | SUPPLEMENTAL MEMORANDUM to re 2 MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Appendix, # 2 Declaration of William J. Bates, # 3 Exhibit A to Bates Declaration, # 4 Text of Proposed Order)(Smith, Jack) (Entered: 12/29/2025) |
| 12/30/2025 | 21 | SUMMONS (6) Issued Electronically as to ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, OFFICE OF THE EXECUTIVE RESIDENCE, SUSIE WILES, U.S. Attorney and U.S. Attorney General (mg) (Entered: 12/30/2025) |
| 12/30/2025 | 22 | MOTION to Modify *Schedule* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Attachments: # 1 Text of Proposed Order)(Cumming, Gregory) (Entered: 12/30/2025) |
| 12/31/2025 | 23 | Memorandum in opposition to re 22 MOTION to Modify *Schedule* filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Exhibit A)(Smith, Jack) (Entered: 12/31/2025) |
| 12/31/2025 | | MINUTE ORDER. Upon consideration of 22 defendants' Motion to Modify Schedule, it is hereby ORDERED that defendants' motion is GRANTED in part and DENIED in part. It is further ORDERED that defendants shall file their supplemental memorandum by January 15, 2026. Plaintiff shall file its reply by January 20, 2026. It is hereby ORDERED the hearing currently set for January 15, 2026 at 3:30 PM is VACATED and CONTINUED to January 22, 2026 at 3:30 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 12/31/2025. (lcrjl2) (Entered: 12/31/2025) |
| 01/02/2026 | 24 | NOTICE of Appearance by Matthew Casassa on behalf of NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES (Casassa, Matthew) (Entered: 01/02/2026) |
| 01/15/2026 | 25 | NOTICE *of Lodging Supplemental Ex Parte Declaration* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES |

13

| | | |
|---|---|---|
| | | ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES re Order on Motion for Leave to File (Cumming, Gregory) (Entered: 01/15/2026) |
| 01/15/2026 | 26 | NOTICE of Appearance by Jacob M. Roth on behalf of All Defendants (Roth, Jacob) (Entered: 01/15/2026) |
| 01/15/2026 | 27 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Engineering Declaration, # 2 Text of Proposed Order Proposed Order)(Cumming, Gregory) (Entered: 01/15/2026) |
| 01/15/2026 | 28 | NOTICE of Appearance by Brantley Mayers on behalf of All Defendants (Mayers, Brantley) (Entered: 01/15/2026) |
| 01/15/2026 | 29 | NOTICE of Appearance by Eitan Sirkovich on behalf of All Defendants (Sirkovich, Eitan) (Entered: 01/15/2026) |
| 01/15/2026 | 30 | SUPPLEMENTAL MEMORANDUM to re Order on Motion to Modify,,, Set/Reset Deadlines/Hearings,, filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Attachments: # 1 Exhibit A– Fisher Declaration, # 2 Exhibit B– Martin Declaration, # 3 Exhibit C– Bowron Declaration, # 4 Exhibit D– Redacted Engineering Declaration, # 5 Exhibit E– Quinn Declaration)(Cumming, Gregory) (Entered: 01/15/2026) |
| 01/20/2026 | 31 | MOTION for Order *Permitting Expert Inspection of the Ballroom Project Site* by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Attachment A)(Smith, Jack) (Entered: 01/20/2026) |
| 01/20/2026 | 32 | Memorandum in opposition to re 31 MOTION for Order *Permitting Expert Inspection of the Ballroom Project Site* filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Sirkovich, Eitan) (Entered: 01/20/2026) |
| 01/20/2026 | 33 | REPLY to opposition to motion re 2 Motion for TRO, filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Declaration of Jonathan B. Jarvis)(Smith, Jack) Modified event on 1/29/2026 (mg). (Entered: 01/20/2026) |
| 01/21/2026 | 34 | NOTICE of Appearance by Thaddeus A. Heuer on behalf of NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES (Heuer, Thaddeus) (Entered: 01/21/2026) |
| 01/21/2026 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER. Regarding defendants' 27 Sealed Motion for Leave to File Under Seal, it is hereby ORDERED that the motion is GRANTED. Regarding plaintiff's 31 Motion for Expert Inspection of the Ballroom Project Site, it is hereby ORDERED that the motion is DENIED for lack of good cause and in light of the national security concerns raised by defendants. SO ORDERED. Signed by Judge Richard J. Leon on 1/21/2026. (lcrjl2) (Entered: 01/21/2026) |
| 01/21/2026 | 35 | MOTION to Strike 33 Supplemental Memorandum, *Jarvis Declaration* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Cumming, Gregory) (Entered: 01/21/2026) |
| 01/21/2026 | 36 | Memorandum in opposition to re 35 MOTION to Strike 33 Supplemental Memorandum, *Jarvis Declaration* filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Smith, Jack) (Entered: 01/21/2026) |
| 01/21/2026 | 37 | SEALED DOCUMENT (DECLARATION) filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (This document is SEALED and only available to authorized persons.)(mg) (Entered: 01/22/2026) |
| 01/22/2026 | | Minute Entry for Preliminary Injunction Hearing held on 1/22/2026 before Judge Richard J. Leon. Oral arguments submitted on Plaintiff's Motion 2 for Preliminary Injunction. Court takes matter under advisement. Forthcoming Order. Court Reporter: Timothy Miller. (zljn) (Entered: 01/22/2026) |
| 01/26/2026 | 38 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Richard J. Leon held on 1–22–26; Page Numbers: 1–48; Date of Issuance: 1–26–26; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/16/2026. Redacted Transcript Deadline set for 2/26/2026. Release of Transcript Restriction set for 4/26/2026.(Miller, Timothy) (Entered: 01/26/2026) |
| 02/02/2026 | 39 | MOTION to Stay *Any Preliminary Injunction Pending Appeal* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT |

| | | |
|---|---|---|
| | | DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Sirkovich, Eitan) (Entered: 02/02/2026) |
| 02/02/2026 | 40 | NOTICE *of Lodging Second Supplemental Ex Parte Declaration* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES (Sirkovich, Eitan) (Entered: 02/02/2026) |
| 02/04/2026 | 41 | MOTION to Strike 39 MOTION to Stay *Any Preliminary Injunction Pending Appeal* by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Casassa, Matthew) (Entered: 02/04/2026) |
| 02/04/2026 | 42 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 12/15/2025. ( Answer due for ALL FEDERAL DEFENDANTS by 2/13/2026.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JESSICA BOWRON served on 12/29/2025; DOUGLAS BURGUM served on 12/30/2025; DEPARTMENT OF THE INTERIOR served on 12/30/2025; GENERAL SERVICES ADMINISTRATION served on 12/29/2025; NATIONAL PARK SERVICE served on 12/29/2025; MICHAEL J. RIGAS served on 12/29/2025; JOHN STANWICH served on 12/29/2025; DONALD J. TRUMP served on 1/7/2026, RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 12/16/2025. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Casassa, Matthew) (Entered: 02/04/2026) |
| 02/05/2026 | 43 | Memorandum in opposition to re 41 MOTION to Strike 39 MOTION to Stay *Any Preliminary Injunction Pending Appeal* filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Sirkovich, Eitan) (Entered: 02/05/2026) |
| 02/06/2026 | 44 | Unopposed MOTION for Extension of Time to *Respond to Plaintiff's Amended Complaint* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Ramus, Michelle) (Entered: 02/06/2026) |
| 02/17/2026 | 45 | Memorandum in opposition to re 39 MOTION to Stay *Any Preliminary Injunction Pending Appeal* filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Casassa, Matthew) (Entered: 02/17/2026) |
| 02/18/2026 | | MINUTE ORDER. Upon consideration of the defendants' 44 Unopposed Motion for Extension of Time to Respond to Plaintiff's Amended Complaint, it is hereby ORDERED that the motion is GRANTED nunc pro tunc. Defendants shall answer or otherwise respond to plaintiff's 19 Amended Complaint fourteen (14) days after the |

16

| | | |
|---|---|---|
| | | Court rules on plaintiff's 2 Motion for Preliminary Injunction. SO ORDERED. Signed by Judge Richard J. Leon on 2/18/2026. (lcrjl2) (Entered: 02/18/2026) |
| 02/20/2026 | 46 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 1/5/2026., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/5/2026. ( Answer due for ALL FEDERAL DEFENDANTS by 3/6/2026.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ROBERT DOWNING served on 2/9/2026; EXECUTIVE OFFICE OF THE PRESIDENT served on 1/14/2026; OFFICE OF THE EXECUTIVE RESIDENCE served on 1/15/2026; SUSIE WILES served on 1/14/2026 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Casassa, Matthew) (Entered: 02/20/2026) |
| 02/26/2026 | 47 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 2/26/2026. (lcrjl2) (Entered: 02/26/2026) |
| 02/26/2026 | 48 | ORDER. Consistent with the attached, plaintiff's 2 Motion for Preliminary Injunction is DENIED. See Order for details. Signed by Judge Richard J. Leon on 2/26/2026. (lcrjl2) (Entered: 02/26/2026) |
| 02/27/2026 | 49 | MOTION for Leave to File *Second Amended Complaint* by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Casassa, Matthew) (Entered: 02/27/2026) |
| 03/01/2026 | | MINUTE ORDER. Upon consideration of the plaintiff's 49 Motion for Leave to File Second Amended Complaint, it is hereby ORDERED that the motion is GRANTED. See Fed. R. Civ. P. 15(a)(2). The Clerk is directed to docket plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief [49–1]. SO ORDERED. Signed by Judge Richard J. Leon on 3/1/2026. (lcrjl2) (Entered: 03/01/2026) |
| 03/01/2026 | 50 | Second AMENDED COMPLAINT against All Defendants filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES.(mg) (Entered: 03/02/2026) |
| 03/05/2026 | 51 | Second MOTION for Preliminary Injunction by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Casassa, Matthew) (Entered: 03/05/2026) |
| 03/05/2026 | | MINUTE ORDER. Regarding plaintiff's 51 Second Motion for Preliminary Injunction, defendants are hereby ORDERED to file a response no later than Thursday, March 12, 2026 at 5:00 PM. Plaintiff shall file a reply, if any, no later than Monday, March 16, 2026 at 5:00 PM. The Court will hold a hearing on the motion on Tuesday, March 17, 2026 at 3:30 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 3/5/2026. (lcrjl2) (Entered: 03/05/2026) |
| 03/12/2026 | 52 | Memorandum in opposition to re 51 Second MOTION for Preliminary Injunction filed by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Attachments: # 1 Declaration Ex. A – Suppl. Stidham Decl., # 2 Declaration Ex. B – Suppl. Martin Decl.)(Sirkovich, Eitan) (Entered: 03/12/2026) |

| 03/13/2026 | 53 | NOTICE *OF AVAILABILITY OF IN–PERSON INSPECTION* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES re 51 Motion for Preliminary Injunction (Sirkovich, Eitan) (Entered: 03/13/2026) |
|---|---|---|
| 03/16/2026 | 54 | REPLY to opposition to motion re 51 Motion for Preliminary Injunction filed by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Casassa, Matthew) (Entered: 03/16/2026) |
| 03/17/2026 | | Minute Entry for Preliminary Injunction Hearing held before Judge Richard J. Leon on March 17, 2026. Oral arguments submitted on Plaintiff's Second Motion 51 for Preliminary Injunction. Court takes matter under advisement. Forthcoming Order. Court Reporter: Timothy Miller. (zljn) (Entered: 03/17/2026) |
| 03/23/2026 | 55 | MOTION for Leave to File *Supplemental Declarations* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Attachments: # 1 Proposed Order, # 2 Second Suppl. Bowron Declaration, # 3 Second Suppl. Martin Declaration)(Mayers, Brantley) (Entered: 03/23/2026) |
| 03/25/2026 | 56 | NOTICE *of Intent to File Opposition and Supplemental Declaration* by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES (Casassa, Matthew) (Entered: 03/25/2026) |
| 03/26/2026 | 57 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Richard J. Leon held on 3–17–26; Page Numbers: 1–36; Date of Issuance: 3–26–26; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/16/2026. Redacted Transcript Deadline set for 4/26/2026. Release of Transcript Restriction set for 6/24/2026.(Miller, Timothy) (Entered: 03/26/2026) |
| 03/27/2026 | 58 | NOTICE OF WITHDRAWAL OF APPEARANCE as to JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES |

| | | |
|---|---|---|
| | | ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. Attorney Gregory Martin Cumming terminated. (Cumming, Gregory) (Entered: 03/27/2026) |
| 03/30/2026 | 59 | NOTICE *of Lodging Third Supplemental Ex Parte Declaration* by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES (Mayers, Brantley) (Entered: 03/30/2026) |
| 03/31/2026 | 60 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 3/31/2026. (lcrjl2) (Entered: 03/31/2026) |
| 03/31/2026 | 61 | ORDER. Consistent with the attached, plaintiff's 51 Motion for Preliminary Injunction is GRANTED. See Order for details. Signed by Judge Richard J. Leon on 3/31/2026. (lcrjl2) (Entered: 03/31/2026) |
| 03/31/2026 | 62 | ENTERED IN ERROR.....NOTICE of Appeal as to 61 Order on Motion for Preliminary Injunction, Order on Motion for Leave to File, 60 Memorandum & Opinion by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. (Sirkovich, Eitan) Modified on 4/1/2026, refiled at docket entry 63 (mg). (Entered: 03/31/2026) |
| 03/31/2026 | 63 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 61 Order on Motion for Preliminary Injunction, Order on Motion for Leave to File, 60 Memorandum & Opinion by JESSICA BOWRON, DOUGLAS BURGUM, DEPARTMENT OF THE INTERIOR, ROBERT DOWNING, EXECUTIVE OFFICE OF THE PRESIDENT, GENERAL SERVICES ADMINISTRATION, NATIONAL PARK SERVICE, OFFICE OF THE EXECUTIVE RESIDENCE, MICHAEL J. RIGAS, JOHN STANWICH, DONALD J. TRUMP, SUSIE WILES. Fee Status: No Fee Paid. (mg) (Entered: 04/01/2026) |
| 04/01/2026 | 64 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 63 Notice of Appeal to DC Circuit Court. (mg) (Entered: 04/01/2026) |
| 04/01/2026 | | USCA Case Number 26−5101 for 63 Notice of Appeal to DC Circuit Court, filed by ROBERT DOWNING, JOHN STANWICH, DONALD J. TRUMP, DOUGLAS BURGUM, OFFICE OF THE EXECUTIVE RESIDENCE, DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE, JESSICA BOWRON, EXECUTIVE OFFICE OF THE PRESIDENT, SUSIE WILES, MICHAEL J. RIGAS, GENERAL SERVICES ADMINISTRATION. (mg) (Entered: 04/01/2026) |
| 04/01/2026 | 65 | MOTION to Clarify *Preliminary Injunction* by NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES. (Casassa, Matthew) (Entered: 04/01/2026) |
| 04/08/2026 | 66 | NOTICE OF CROSS APPEAL as to 48 Order, Preliminary Injunction, 47 Memorandum & Opinion by NATIONAL TRUST FOR HISTORIC PRESERVATION |

| | | IN THE UNITED STATES. Filing fee $ 605, receipt number ADCDC–12347960. Fee Status: Fee Paid. Parties have been notified. (Craig, Gregory) (Entered: 04/08/2026) |
|---|---|---|

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES,<br>   Plaintiff,<br><br>  v.<br><br>NATIONAL PARK SERVICE, *et al.*,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Case No. 25-4316 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

March **31**___, 2026 [Dkt. #51, 55]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff's Second Motion for Preliminary Injunction [Dkt. #51] is **GRANTED**; and it is further

**ORDERED** that the National Park Service; Jessica Bowron, in her official capacity as Acting Director, National Park Service; John Stanwich, in his official capacity as Superintendent, the White House and President's Park; the Department of the Interior; Douglas Burgum, in his official capacity as Secretary of the Interior; the General Services Administration; Michael J. Rigas, in his official capacity as Acting Administrator, General Services Administration; the Executive Office of the President; Susie Wiles, in her official capacity as White House Chief of Staff; the Office of the Executive Residence; and Robert B. Downing, in his official capacity as White House Chief Usher (together, "Defendants"),

1

and any agents of Defendants or any other persons working at their direction or in active concert therewith, are preliminarily **ENJOINED** from taking any action in furtherance of the physical development of the proposed ballroom at the former site of the East Wing of the White House, including but not limited to any further demolition, site preparation work, landscape alteration, excavation, foundation work, or other construction or related work, other than actions strictly necessary to ensure the safety and security of the White House and its grounds, including the ballroom construction site, and provide for the personal safety of the President and his staff; and it is further

**ORDERED** that, subject to the safety-and-security exception above, no such work shall proceed absent express authorization from Congress; and it is further

**ORDERED** that Defendants' counsel shall provide written notice of this Order to all officers, agents, successors, servants, employees, and attorneys of Defendants, as well as any other persons working at their direction, in active concert therewith, or subject to Defendants' control; and it is further

**ORDERED** that this Order shall take effect fourteen (14) days after its issuance; and it is further

**ORDERED** that Defendants shall file a status report apprising the Court of the status of their compliance with this Order no later than twenty-one (21) days after the date the Order takes effect; and it is further

**ORDERED** that the security requirement is hereby waived, *see* Fed. R. Civ. P. 65(c); and it is further

**ORDERED** that Defendants' Motion for Leave to File Supplemental Declarations [Dkt. #55] is **GRANTED.**

**SO ORDERED.**


RICHARD J. LEON
United States District Judge

3

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES, <br> Plaintiff, <br><br> v. <br><br> NATIONAL PARK SERVICE, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Case No. 25-4316 (RJL) |

**MEMORANDUM OPINION**
March **31** , 2026 [Dkt. #51]

The President of the United States is the steward of the White House for future generations of First Families. He is not, however, the owner! President Trump ("the President") claims that Congress has given him authority in existing statutes to construct his East Wing ballroom project and to do it with private funds. The plaintiff, the National Trust for Historic Preservation in the United States ("National Trust"), claims the President has no such authority under existing statutes and that a preliminary injunction is necessary to avoid irreparable harm. I have concluded that the National Trust is likely to succeed on the merits because no statute comes close to giving the President the authority he claims to have. As such, I must therefore **GRANT** the National Trust's Motion for a Preliminary Injunction, and the ballroom construction project must stop until Congress authorizes its completion.

1

## BACKGROUND

### I.    The White House

Shortly after the founding, Congress passed the Residence Act of 1790, which authorized three commissioners to "provide suitable buildings for the accommodation of . . . the President." *See* An Act for Establishing the Temporary and Permanent Seat of the Government of the United States, ch. 28, 1 Stat. 130 (1790).[1]  The three commissioners, empowered by Congress and appointed by the President, selected James Hoban as the architect of the President's residence through a design competition.  *See* Pl.'s Suppl. Br., Annex 1 ("Annex") [Dkt. #20-1] at 2.  Congress funded construction of the White House through several statutes.  *See id.*  In 1800, President John Adams moved into the still-unfinished White House, and every President has resided in the White House since then.  Second Am. Compl. [Dkt. #50] ¶ 27.

Congress has continued to authorize and fund construction and maintenance at the White House up until the present day.  *See generally* Annex.  For example, Congress authorized repairs to the White House after it suffered extensive damage during the War of 1812, *see* Annex at 2–3; Act of Feb. 13, 1815, ch. 41, 3 Stat. 205; Act of Feb. 10, 1820, ch. 10, 3 Stat. 541, and received regular updates on progress, *see* H. R. Doc. No. 15-8, at 14–

---

[1] Relevant filings are abbreviated as follows:  Pl.'s Mem. in Supp. of Mot. for TRO & Prelim. Inj. ("Pl.'s TRO Br.") [Dkt. #2-1]; Defs.' Mem. in Opp'n to Mot. for TRO & Prelim. Inj. ("Defs.' TRO Opp'n") [Dkt. #15-1]; Pls.' Suppl. Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Suppl. Br.") [Dkt. #20]; Defs.' Suppl. Resp. Br. in Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Defs.' Suppl. Br.") [Dkt. #30]; Pl.'s Reply Br. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Reply Br.") [Dkt. #33]; Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Renewed PI Br.") [Dkt. #51-1]; Defs.' Mem. in Opp'n to Pl.'s Second Mot. for Prelim. Inj. ("Defs.' Renewed Opp'n") [Dkt. #52]; Pl.'s Reply in Supp. of Mot. for Prelim. Inj. ("Pl.'s Renewed Reply Br.") [Dkt. #54].

2

16 (1818). Congress appropriated funds for construction of the South Portico in 1823, the North Portico in 1829, and the East and West Wings in 1902. *See* An Act Making Appropriations for the Public Buildings, ch. 62, 3 Stat. 784 (1823); An Act Making Appropriations for the Public Buildings, and for Other Purposes, ch. 51, 4 Stat. 362 (1829); Act of June 28, 1902, ch. 1301, 32 Stat. 419, 460.

In the late 1940s, after the discovery of major structural issues, Congress appropriated funds for "the renovation, repair, and modernization" of the White House but prohibited any "change of [the] present architectural appearance of the exterior of the mansion or the interior of its main floor." Act of June 23, 1949, ch. 236, 63 Stat. 231, 235; *see also* Annex at 10–11. More recently, Congress funded the replacement of the White House perimeter fence in 2019 through a series of appropriations. *See* Annex at 13–14; Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 135, 435; Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242, 2503.

Today, the White House remains the official residence of the President. Second Am. Compl. ¶ 25. It sits in President's Park, a federal park administered by the National Park Service in Washington, D.C. *Id.*

## II.    The East Wing Ballroom Project

On July 31, 2025, the White House issued a press release announcing plans to build a "State Ballroom" on White House grounds. Second Am. Compl. ¶ 36; *see also* Mot. for TRO & Prelim. Inj., Ex. J [Dkt. #2-14]. The press release stated the ballroom would be constructed at the site of the "small, heavily changed, and reconstructed East Wing" and would encompass "approximately 90,000 total square feet." Ex. J. The press release also

stated that "President Trump, and other patriot donors, have generously committed to donating the funds to build" the ballroom. *Id.*; *see also* Mot. for TRO & Prelim. Inj., Ex. X ("Ex. X") [Dkt. #2-28] (ballroom will have "zero cost to the American Taxpayer!").

On October 20, 2025—without advance notice or apparent approval—President Trump announced on social media that "ground ha[d] been broken on the White House grounds to build the new, big, beautiful White House Ballroom." Second Am. Compl. ¶ 51. On October 21, 2025, media outlets confirmed that heavy machinery was demolishing the East Wing. *Id.* ¶ 53. The next day, President Trump showed new renderings of the proposed ballroom to the press, noting that "many presidents have made changes" at the White House but "[t]his . . . obviously would be the biggest change." *Id.* ¶¶ 59–60. By October 23, 2025, the East Wing had been demolished in its entirety. *Id.* ¶ 64.

After the demolition of the East Wing, the National Trust—a nonprofit with "thousands of members" who "have a substantial interest in preserving and protecting historic and cultural resources in Washington, D.C."—contacted various federal entities to express concerns. Mem. Op. [Dkt. #47] at 3–4; *see also* Second Am. Compl. ¶ 22. The National Trust warned that the "massing and height of the proposed new construction would overwhelm the White House itself and might also permanently disrupt the carefully balanced classical design of the White House." Second Am. Compl. ¶ 55 (cleaned up).

Receiving no response, the National Trust brought this lawsuit in December 2025. *See* Compl. [Dkt. #1]. Since then, there has been significant progress on construction of the ballroom. The site of the former East Wing is a "bustling project site" with "heavy construction machinery," "pile drivers," and a "construction crane." Second Am. Compl.

4

¶¶ 78, 81. Demolition work has been largely completed, and work on "footings and below-grade structural concrete" began in February 2026. Decl. of John Stanwich ("Stanwich Decl.") [Dkt. #14-6] ¶ 20. "Above[-]grade structural work" is "anticipated to begin" in April 2026. *Id.* Indeed, President Trump has stated that ballroom construction is "ahead of schedule." Pl.'s Renewed PI Br. at 23 (quoting Donald J. Trump (@realDonaldTrump), Truth Social (Feb. 10, 2026, at 1:41 PM ET), https://truthsocial.com/@realDonaldTrump /posts/116047799547098230).

According to the parties' filings, the ballroom plans are in the final stages of the design approval process. The Commission of Fine Arts approved designs on February 27, 2026. *See* T. Luebke to J. Fisher, CFA 19/FEB/26-1, https://perma.cc/CV2F-VE6M (cited in Suppl. Decl. of Heather Martin ("Martin Suppl. Decl.") [Dkt. #52-2] ¶ 6). The National Capital Planning Commission has reviewed detailed "final" plans for the ballroom and is scheduled to vote on the design on April 2, 2026. *See* Martin Suppl. Decl. ¶ 7. The plans presented to these entities show a planned size of 89,000 square feet and a seated capacity of 1,000 guests. Exec. Director's Recommendation, Nat'l Cap. Planning Comm'n (Mar. 5, 2026), https://perma.cc/4LFC-YDEJ (cited in Martin Suppl. Decl. ¶ 7). The ballroom is now projected to cost around $400 million, and the President has represented that private donations will foot the bill. *See* Jan. 22, 2026 Hr'g Tr. [Dkt. #38] at 33:2–3; Ex. X.

## III.    Procedural History

I recounted the procedural history of this case in my previous opinions, which I incorporate by reference here. *See* Mem. Order [Dkt. #17] at 2; *Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, __ F. Supp. 3d __, 2025 WL 3672837 (D.D.C. Dec. 17, 2025); Mem.

5

Op. [Dkt. #47]; *Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, __ F. Supp. 3d __, 2026 WL 533420 (D.D.C. Feb. 26, 2026). To summarize, I previously denied the National Trust's motion for a temporary restraining order for lack of irreparable harm before the Court could decide the motion for a preliminary injunction. *See* Mem. Order. On February 26, 2026, I denied the National Trust's request for a preliminary injunction. *See* Mem. Op. While I concluded that the National Trust had shown a "substantial likelihood" of Article III standing, *see id.* at 7–12, I found that the National Trust's motion suffered from two fatal flaws. As to its Administrative Procedure Act ("APA") claims, I concluded that "the Office of the Executive Residence . . . is not an 'agency,' so there is no 'agency action' to enjoin under the APA." *Id.* at 13. As to the National Trust's constitutional claims, I concluded that those claims were foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994) because they were "statutory in nature." Mem. Op. at 13, 16–22.

On February 27, 2026, the National Trust sought leave to file a second amended complaint, *see* Mot. for Leave to File Second Am. Compl. [Dkt. #49], which I granted, *see* Minute Order (Mar. 1, 2026). The National Trust's second amended complaint adds four new *ultra vires* claims challenging the Defendants' statutory authority to construct a ballroom on White House grounds and to do it with private funds. Second Am. Compl. ¶¶ 197–224.[2] On March 5, the National Trust filed a renewed motion for a preliminary injunction based on its *ultra vires* claims. *See* Second. Mot. for Prelim. Inj. [Dkt. #51].

---

[2] Defendants named in the Second Amended Complaint include: the National Park Service; Jessica Bowron, in her official capacity as Acting Director of the National Park Service; John Stanwich, in his official capacity as Superintendent of the White House and President's Park; the Department of the Interior; Douglas Burgum, in his official capacity as Secretary of the Interior; the General Services Administration;

6

Defendants filed their opposition on March 12, *see* Defs.' Renewed Opp'n, and the National Trust filed its reply on March 16, *see* Pl.'s Renewed PI Reply Br. I held a hearing on March 17, 2026. The National Trust's motion is now ripe for decision.

## IV.    Statutory Background

The National Trust's claims require consideration of three main statutes.

*3 U.S.C. § 105(d)*. Section 105, titled "Assistance and Services for the President," provides for the employment of staff members to assist the President and authorizes appropriations for expenses related to White House administration. Most relevant here, § 105(d) provides: "There are authorized to be appropriated each fiscal year to the President such sums as may be necessary for[] (1) the care, maintenance, repair, alteration, refurnishing, improvement, air-conditioning, heating, and lighting (including electric power and fixtures) of the Executive Residence at the White House." 3 U.S.C. § 105(d). The statute continues: "Sums appropriated under this subsection for expenses described in paragraph[] (1) . . . may be expended as the President may determine, notwithstanding the provisions of any other law." *Id.* This statute was enacted in 1948, *see* Act of June 25, 1948, ch. 644, §§ 109, 110, 62 Stat. 672, 679, and Congress added the language about "care, maintenance, repair . . ." in 1978, *see* Act of Nov. 2, 1978, Pub. L. No. 95-570, § 105, 92 Stat. 2445, 2446.

---

Michael J. Rigas, in his official capacity as Acting Administrator of the General Services Administration; Donald J. Trump, in his official capacity as President of the United States; the Executive Office of the President; Susie Wiles, in her official capacity as White House Chief of Staff; the Office of the Executive Residence; and Robert B. Downing, in his official capacity as White House Chief Usher. They are referred to collectively in this opinion as "Defendants."

7

*40 U.S.C. § 8106*. This statute provides that "[a] building or structure shall not be erected on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." 40 U.S.C. § 8106. This provision was originally enacted in 1912, *see* Act of Aug. 24, 1912, ch. 355, 37 Stat. 417, 444 (codified at 40 U.S.C. § 68 (1912)), and was recodified in 2002, *see* Act of Aug. 21, 2002, Pub. L. No. 107-217, 116 Stat. 1062, 1206.

*54 U.S.C. § 100101*. The National Park Service ("NPS") Organic Act provides that the Secretary of the Interior, acting through the director of the NPS,

> shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

54 U.S.C. § 100101(a). Congress later reaffirmed these purposes through a 1978 amendment known as the "Redwood Amendment." *See* Act of Mar. 27, 1978, Pub. L. No. 95-250, sec. 101(b), 92 Stat. 163, 166 (codified at 54 U.S.C. § 100101(b)(2)). The Redwood Amendment provides that the "management" and "administration" of NPS units "shall not be exercised in derogation of the values and purposes for which the System units have been established, except as directly and specifically provided by Congress." 54 U.S.C. § 100101(b)(2).

### LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555

8

U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

**ANALYSIS**

## I.    Likelihood of Success on the Merits

This case, in essence, is about whether the President has the authority to build a ballroom on White House grounds with private funds without seeking authorization from Congress. The National Trust asserts that Defendants' actions are *ultra vires* of statutory authority and violate the APA. But why do Defendants even need statutory authority in the first place? The Constitution shows why.

The Property Clause vests Congress with complete authority over public lands. *See* U.S. Const. Art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). "Congress exercises the powers both of a proprietor and of a legislature over the public domain," *Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976), and those powers are "without limitations," *id.* at 539 (quoting *United States v. City & Cnty. of San Francisco*, 310 U.S. 16, 29 (1940)). This "broad" grant of authority "extend[s] to . . . personal and real property rightfully belonging to the United States." *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 331 (1936) (quoting Joseph Story, Commentaries on the Constitution of the United States §§ 1325, 1326 (1833)).

9

The Appropriations Clause "provides that money may be 'drawn from the Treasury' only 'in Consequence of Appropriations made by Law.'" *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 426 (2024) (quoting U.S. Const. Art. I, § 9, cl. 7). "Since the earliest days of our Republic, Congress's 'power over the purse' has been its 'most complete and effectual weapon' to ensure that the other branches do not exceed or abuse their authority." *Id.* at 447–48 (Alito, J., dissenting) (quoting The Federalist No. 58, at 359 (Clinton Rossiter ed., 1961) (James Madison)).

The District Clause gives Congress legislative authority over the District of Columbia. *See* U.S. Const. Art. I, § 8, cl. 17. The Constitution "confer[red]" this power on Congress "in broad terms." *Nat'l Mut. Ins. Co. of Dist. of Col. v. Tidewater Transfer Co.*, 337 U.S. 582, 589 (1949).

Together, the Property Clause, the Appropriations Clause, and the District Clause establish Congress's primacy over federal property, spending, and the District of Columbia. Indeed, Defendants have declined to argue that they have any inherent constitutional authority to build the ballroom. *See* Defs.' Suppl. Br. at 12, 30. So the President must identify some law that allows him to demolish the East Wing and construct his planned ballroom with private funds. For the following reasons, I conclude that the National Trust is likely to succeed on the merits on its *ultra vires* claims because no law comes close to giving the President this authority.[3]

---

[3] Defendants argue that successive preliminary injunction motions are improper. *See* Defs.' Renewed Opp'n at 5–6. But there is no per se bar. And here, "change[s] in circumstances" counsel in favor of considering the motion. *U.S. Sec. & Exch. Comm'n v. Young*, 121 F.4th 70, 78 (10th Cir. 2024); *see also Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648–49 (2d Cir. 1989). It was only *after* the National Trust

10

## A.    *Ultra Vires*

The National Trust argues that Defendants' construction of the ballroom is *ultra vires*. "Literally translated, the Latin phrase 'ultra vires' means 'beyond the powers (of),' and as a legal term, the phrase means 'unauthorized' or 'beyond the scope of power allowed or granted by law.'" *Adamski v. McHugh*, 304 F. Supp. 3d 227, 236 (D.D.C. 2015) (cleaned up) (quoting Black's Law Dictionary 1755 (10th ed. 2014)).

To succeed on a nonstatutory *ultra vires* claim, the plaintiff must show that "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Fed. Express Corp. v. U.S. Dep't of Com.* ("*FedEx*"), 39 F.4th 756, 763 (D.C. Cir. 2022) (internal quotation marks omitted).  Defendants have not disputed the first two factors, so the principal question before the Court is whether the President has "'stepped so plainly beyond the bounds of [his statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court.'" *Id.* at 764 (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)).  Unfortunately, he has!

*Ultra vires* review is a high bar—the Supreme Court has described it as "a Hail Mary pass." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (internal quotation

---

amended its complaint that "Defendants for the first time disclaimed the President's constitutional authority to build the ballroom." Mem. Op. at 6 (emphasis omitted). Defendants' late-breaking abandonment of any constitutional arguments, as well as Defendants' factual representations about the Office of the Executive Residence, were crucial to my decision to deny the National Trust's first motion. *See id.* at 13. I find these circumstances "[]sufficient reason why the grounds were not urged in the earlier application." 43A C.J.S. *Injunctions* § 365.

11

marks omitted). But it is not insurmountable. Our Circuit has held that the U.S. Postal Service's failure to maintain statutorily-mandated pay differentials was *ultra vires*, *see Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 972–74 (D.C. Cir. 2022), and that an executive order barring government contractors from permanently replacing lawfully striking employees was *ultra vires* under the National Labor Relations Act, *see Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1324 (D.C. Cir. 1996). Most recently, the Court of International Trade's decision invalidating the Trump Administration's tariffs on *ultra vires* review was affirmed on the merits by the Supreme Court. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1369–70 (Ct. Int'l Trade), *aff'd in part, vacated in part, remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *aff'd sub nom. Learning Res., Inc. v. Trump*, 146 S. Ct. 628 (2026).

Here, the National Trust is likely to succeed in its argument that Defendants have "stepped . . . plainly beyond the bounds of" their statutory authority. *FedEx*, 39 F.4th at 763. Indeed, neither 3 U.S.C. § 105, nor the NPS Organic Act, authorize the President to build a ballroom on White House grounds. Moreover, his actions run up against an explicit statutory prohibition in 40 U.S.C. § 8106. In fact, Defendants' reading of the statutes *assumes* that Congress has granted nearly unlimited power to the President to construct anything, anywhere on federal land in the District of Columbia, regardless of the source of funds. This clearly is not how Congress and former Presidents have managed the White House for centuries, and this Court will not be the first to hold that Congress has ceded its powers in such a significant fashion!

12

1.    <u>**3 U.S.C. § 105**</u>

Defendants principally rely on 3 U.S.C. § 105(d)(1) as their authority to construct the ballroom.  *See* Defs.' TRO Opp'n at 16–17; Defs.' Suppl. Br. at 18, 32–35; Defs.' Renewed Opp'n at 10–13.  As I read it, 3 U.S.C. § 105(d)(1) is a statute authorizing the President to conduct ordinary maintenance and repair of the White House, up to the limits of the congressionally appropriated amount.  Interpreting 3 U.S.C. § 105(d)(1) to grant virtually unlimited authority to the President to demolish and build at will on White House grounds is a "patent[] misconstruction of the Act."  *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (quoting *FedEx*, 39 F.4th at 764).  How so?

Let's start with the kind of statute 3 U.S.C. § 105 is: an authorization for appropriations.  Section 105 says "[t]here are authorized to be appropriated each fiscal year to the President such sums as may be necessary for" specific purposes.  3 U.S.C. § 105(d).  "The expression 'authorized to be appropriated' clearly indicates that no appropriation is made or intended to be made, but the bill when enacted becomes the authority of law for an expected appropriation in the future[.]"  GAO, The Red Book 2-54 to 2-55 (4th ed. 2016) (quoting 27 Comp. Dec. 923 (1921) (ellipses omitted)).  An "authorization act" is "a directive to Congress itself, which Congress is free to follow or alter . . . in the subsequent appropriation act."  *Id.* at 2-56 (citing B-323433 (Comp. Gen. Aug. 14, 2012)); *see also, e.g., Maine Cmty. Health Options v. United States*, 590 U.S. 296, 307–10 (2020) (relying on GAO Red Book to interpret federal appropriations law).  Since § 105(d) is an authorization act, it must be read in conjunction with the relevant appropriations statute,

13

which is the Further Consolidated Appropriations Act, 2024. *See* Pub. L. No. 118-47, 138 Stat. 460, 532 (2024).

So what do these statutes authorize the President to do? Section 105(d)(1) authorizes the use of appropriated funds for "the care, maintenance, repair, alteration, refurnishing, improvement, air-conditioning, heating, and lighting (including electric power and fixtures) of the Executive Residence at the White House." 3 U.S.C. § 105(d)(1). The corresponding 2024 appropriations act provides "[f]or the repair, alteration, and improvement of the Executive Residence at the White House" at a fixed sum— $2,475,000—which is appropriated specifically "for required maintenance, resolution of safety and health issues, and continued preventative maintenance." 138 Stat. at 532.

Section 105(d)(1) plainly authorizes the President to conduct ordinary maintenance and upkeep of the White House, and nothing more! Reading the text as an "[o]rdinary reader[] of English" would, *Heating, Air Conditioning & Refrigeration Distribs. Int'l v. EPA*, 71 F.4th 59, 68 (D.C. Cir. 2023), the list of authorized actions—which includes words like "care, maintenance, repair" and "air-conditioning, heating, and lighting"—bring to mind things like replacing the lightbulbs, fixing broken furniture, and changing the wallpaper, not wholesale demolition of entire buildings and construction of new ones.

Defendants point to "alteration" and "improvement," arguing that these terms are "capacious" and permit the President to "modify" the White House and "make [it] better," including by constructing entirely new buildings like the ballroom. Defs.' Renewed Opp'n at 10. A brazen interpretation, indeed! Those two words cannot bear that weight, for a few reasons.

14

*First*, the meanings of "alteration" and "improvement" are "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Here, the "neighboring words," *id.*, including "refurnishing," "heating," and "maintenance," all strongly suggest *minor* "alteration[s]" and "improvement[s]," 3 U.S.C. § 105(d), not wholesale demolition and reconstruction. *See also, e.g.*, *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 643 (2026) (reading "regulate" in the context of its "neighboring words" to conclude that "Congress did not intend for 'regulate' to include the revenue-raising power" (first quoting *Williams*, 553 U.S. at 294)); *Yates v. United States*, 574 U.S. 528, 544 (2015) (reading "tangible object" to refer "specifically to the subset of tangible objects involving records and documents"). Reading "alteration" and "improvement" narrowly also comports with the "cardinal principle" that courts should "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted).

*Second*, reading § 105(d)(1) to grant limited authority to the President to maintain the White House is consistent with the principle that Congress "does not . . . hide elephants in mouseholes"—meaning that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). As our Circuit has explained, "the *American Trucking* rule rests on a . . . modest intuition about how we use language." *Heating, Air Conditioning & Refrigeration*, 71 F.4th at 67. "Ordinary readers of English," *id.*, would not expect Congress to grant the President unchecked construction authority over the White House

15

through two disparate words in a statute about replacing furniture. *Cf. Biden v. Nebraska*, 600 U.S. 477, 513 (2023) (Barrett, J., concurring) ("[C]ontext is . . . relevant to interpreting the scope of a delegation.").[4]

Defendants argue that canons of construction have no place in *ultra vires* review. Defs.' Renewed Opp'n at 11.   Please!   The Supreme Court itself has made it clear that courts have a *duty* to locate the "single, best meaning" of the statute, no matter the cause of action. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). *Ultra vires* review does not suspend commonsense interpretive canons, nor does it grant the government flexibility to adopt an "utterly unreasonable" reading of a statute that is "contrary to the [statute's] plain language." *Nat'l Ass'n of Postal Supervisors*, 26 F.4th at 977–80 (applying canon of construction to reject agency's reading of statute in *ultra vires* case).   Even in *ultra vires* cases, courts retain their duty to apply "commonsense" canons of construction grounded in the way ordinary people read English. *Williams*, 553 U.S. at 294.

*Third*, Defendants' interpretation of § 105(d)(1) lacks any discernible limits. Courts, however, generally do not read statutes to give the "broadest imaginable definitions of its component words," divorced from "linguistic and statutory context." *Dubin v. United States*, 599 U.S. 110, 120 (2023) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) (alterations incorporated)).   Under Defendants' reading, virtually any change to the White House could be framed as an "alteration" or "improvement."   Indeed, some might even view tearing down the White House and building a modern skyscraper in its place as

---

[4] The "*American Trucking* rule" is different from the major questions doctrine, which the National Trust has not argued applies here. *See Heating, Air Conditioning & Refrigeration*, 71 F.4th at 67.

16

an "improvement." As Defendants have argued it, so long as the White House grounds are "developed" or "occupied by buildings and structures," Defs.' Renewed Opp'n at 10, the President has complete authority to engage in whatever construction activity he sees fit.[5] How grand!

*Fourth*, Defendants' interpretation of § 105(d) loses sight of its "statutory context." *Sackett v. EPA*, 598 U.S. 651, 675 (2023). Section 105(d)(1) is an authorization of appropriations. While it gives the President discretion to spend funds "as [he] may determine, notwithstanding the provisions of any other law," that discretion applies *only* to "[s]ums appropriated under" § 105(d)(1). 3 U.S.C. § 105(d). Section 105(d) simply does not speak to the President's authority to spend funds *not* appropriated under the statute. Defendants must concede that the President is not spending "[s]ums appropriated under" § 105(d)(1) because $2.475 million does not come close to supplying the approximately $400 million required to construct the ballroom. *See* Defs.' Suppl. Br. at 34. So both the plain language of the statute and the annual amount that Congress has appropriated to the President pursuant to § 105(d)(1) limit the President's authority.[6]

To make up the gaping chasm between the § 105(d)(1) appropriations ($2.475 million) and the projected cost of the ballroom ($400 million), Defendants have identified

---

[5] Defendants suggested at oral argument that "bulldoz[ing] the entire White House and build[ing] something completely different in its place" would "exceed[] the scope of 'alteration and improvement.'" Jan. 22, 2026 Hr'g Tr. 41:18–22. But if demolishing one wing of the White House and building a new structure is permissible, it is difficult to understand how demolishing the rest of the complex would cross the line. Both could conceivably "bring [the White House] into a more profitable or desirable state." Defs.' Renewed Opp'n at 10 (quoting Improve, Oxford English Dictionary, 2d ed. 1989).

[6] The precise and limited language of the 2024 appropriation—for "required maintenance, resolution of safety and health issues, and continued preventive maintenance"—further supports a limited reading of § 105(d)(1). 138 Stat. at 532.

17

a convoluted funding scheme that they argue permits the President to fund the ballroom using private donations. Defendants' argument goes like this: Congress has authorized the Secretary of the Interior to accept donations "for the purposes" of the National Park System. 54 U.S.C. § 101101(2). National Park Service donations may be "appropriated to be disbursed" as trust funds. 31 U.S.C. § 1321(a)(17), (b)(1). The Economy Act permits the Secretary of the Interior to transfer funds to the White House account because NPS has "contract[ed]" with the Office of the Executive Residence ("EXR") for the ballroom project. 31 U.S.C. § 1535(a); *see* Suppl. Decl. of Jessica Bowron [Dkt. #30-3] ¶¶ 12–13. So, according to Defendants, this aptly described Rube Goldberg contraption authorizes the President to use private donations to the Secretary of the Interior for the purposes of 3 U.S.C. § 105(d)(1).

While its legality is not squarely at issue here, this funding mechanism is, to say the least, a far cry from affirmative congressional *authorization*. Defendants cannot evade the limitations of § 105(d)(1) and the 2024 appropriations act through a series of unrelated statutes that say nothing about the President, the White House, or the construction of a ballroom.

*Finally*, "[s]tatutory history points in the same direction" as my reading of § 105(d)(1). *Sackett*, 598 U.S. at 673. Plaintiff's historical annex lays out a nearly unbroken history of congressional authorization for construction and major renovations at the White House. *See generally* Annex. Not only did Congress authorize specific changes through legislation, *see id.*, but in some instances Congress exercised its oversight authority over specific projects, *see, e.g.*, H. R. Doc. No. 18-60, at 1 (1824) (examining the "work

18

done on the South Portico of the President's House"); An Act To Provide for a Commission on Renovation of the Executive Mansion, ch. 51, 63 Stat. 45 (1949).  In other cases, Congress authorized appropriations of funds for the "building to accommodate the offices of the President" and left the "details" to be "approved by the President."  *See* Act of June 28, 1902, ch. 1301, 32 Stat. 419, 460 (authorizing construction of the original East and West Wings).  There is zero evidence that when Congress enacted the relevant language in § 105(d)(1) in 1978, Congress intended a sea-change in the way that it authorizes and funds construction at the White House.[7]

In sum, Defendants ask this Court to ignore the full text of the statute in favor of two words plucked free from all statutory context.  Because Defendants' reading of the statute is clearly contrary to its plain meaning, their reliance on § 105(d)(1) is likely *ultra vires*.

### 2.    40 U.S.C. § 8106

Because Congress holds the keys to the Nation's property, the President must have *some* statutory basis to build the ballroom.  Section 105(d)(1) doesn't work, so the Court

---

[7] One clue that Congress did not intend to give the President vast construction authority in § 105(d)(1) is Congress's use of similar language in a different statute.  *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").  In 1966—a little over a decade before the relevant version of § 105(d)(1) was enacted—Congress passed a law providing that "the Administrator of General Services is hereby authorized to plan, design, and construct an official residence for the Vice President of the United States in the District of Columbia."  Pub. L. No. 89-386, § 1, 80 Stat. 106, 106 (1966).  In a separate subsection, Congress authorized the Administrator to provide "for the care, maintenance, repair, improvement, alteration, and furnishing of the official residence and grounds, including heating, lighting, and air conditioning."  *Id.* § 3.  Construction of the Vice President's residence was delayed indefinitely due to "economic conditions."  *The Vice President's House*, N.Y. Times (Apr. 27, 1966), https://perma.cc/E7KK-4X38.  But the statutory text indicates that Congress knew how to distinguish between construction and maintenance.

19

could find the President's actions *ultra vires* on that basis alone. But to underscore Defendants' lack of statutory authority, Congress has affirmatively prohibited the "erect[ion]" of "[a] building or structure" "on any reservation, park, or public grounds of the Federal Government in the District of Columbia without express authority of Congress." 40 U.S.C. § 8106.

Defendants do not dispute that, if the statute is valid and applicable, then the ballroom qualifies as a "structure" in a "park . . . of the Federal Government in the District of Columbia." Defs.' Suppl. Br. at 29. Indeed, the statute appears to be a "specific and unambiguous statutory directive." *FedEx*, 39 F.4th at 764 (quoting *Griffith*, 842 F.2d at 493). It commands, without reservation, that anyone who constructs a building on federal parkland in the District of Columbia needs the "express authority of Congress." 40 U.S.C. § 8106.

Not surprisingly, Defendants raise a number of objections to the application of § 8106. None, however, overcome the statute's clear text.

*First*, Defendants argue that the phrase "express authority of Congress" in § 8106 refers to a general "authority from Congress to *build*—not to build a *particular structure*." Defs.' Renewed Opp'n at 19. The National Trust's interpretation would, according to Defendants, implausibly require Congress to approve specific buildings on a project-by-project basis. But whether § 8106 requires general or specific authorization is beside the point because Congress has not provided *any* authorization to Defendants. Without question, Congress has not specifically authorized the ballroom construction! And, as discussed throughout this opinion, Defendants have not identified any statute giving the

20

President or any other Defendants freewheeling authority to construct buildings at the White House or in the District of Columbia. So the level of specificity that § 8106 requires is not dispositive here.

In my view, § 8106 is most naturally read to require *some form* of authorization from Congress to construct a building, and an appropriation of funds—either a lump sum for construction or a specific appropriation for a particular project—would easily satisfy that requirement. Indeed, an appropriation from Congress is authorization to use funds for a specified purpose. *See* 31 U.S.C. § 1301(a); *see also U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1348 (D.C. Cir. 2012) ("The [Appropriations] Clause does not permit an agency . . . to authorize the expenditure of funds beyond what Congress has approved." (internal quotation marks omitted)). It is as simple as that.

*Second*, Defendants argue that § 8106 should not be read to constrain the President or limit construction at the White House absent a clear statement. Please! A clear statement rule makes sense when Congress is legislating in an area where the President exercises overlapping constitutional authority. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992) (declining to read the APA as subjecting the President to judicial review "[o]ut of respect for the separation of powers and the unique constitutional position of the President"); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991). But Defendants here have disclaimed that the President has any inherent constitutional authority over construction at the White House and have conceded that Congress's constitutional authority over federal property is "exclusive." Pl.'s Suppl. Br. at 10; *see* Defs.' Suppl. Br. at 12, 30. In addition, Congress has continued to exercise, via its appropriations authority, close

21

oversight over spending at the White House—including by prescribing the number of staff and their compensation. *See generally* 3 U.S.C. § 105. I therefore decline to read § 8106 as excluding the President.[8]

*Third*, Defendants offer a series of historical points showing, Defendants contend, that § 8106 cannot really mean what it says. Defendants argue that Congress did not intend § 8106 to apply to NPS or the White House. Defendants point to examples of buildings constructed by NPS on national parkland and by the President on White House grounds to argue that § 8106 is not a viable constraint on Defendants' authority. *See* Defs.' Renewed Opp'n at 19–23. Of course, when the "text is clear," courts "need not consider . . . extra-textual evidence." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material."). In any event, Defendants' extratextual evidence is neither "uniform[]" nor "compelling." *NLRB*, 580 U.S. at 305.

Defendants first argue that Congress enacted § 8106 in 1912 to stop "unauthorized third parties" from building on federal land in Washington, D.C. and did not intend § 8106 to constrain the Government. *See* Defs.' Renewed Opp'n at 19 (explaining that at the time, D.C. federal property was "illegally used as dumps, or occupied by shacks, gardens, [and] railroad companies"). While other statutes from the era suggest "unlawful occupation" of "public lands" in D.C. was a concern of Congress, *see* Act of April 28, 1902, ch. 594, 32

---

[8] Defendants' point proves too little for yet another reason: even if § 8106 does not apply to the President himself, it still applies to EXR and the other Defendants.

22

Stat. 120, 152 (directing U.S. Army Corps of Engineers to prevent "unlawful occupation" of D.C. public lands), this vague historical evidence has no connection to the text of § 8106. Moreover, Defendants' argument cannot be reconciled with their suggestion that § 8106 *applies* to Government agencies besides NPS. *See* Defs.' Renewed Opp'n at 23. Nor does Defendants' reliance on post-enactment legislative history, *see id.* at 20, move the needle. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").[9]

Defendants next attempt to exclude NPS from the reach of § 8106. They point to a similar statute enacted in 1912 that applied to the Department of the Interior. *See* Defs.' Renewed Opp'n at 22 ("No expenditure for construction of administration or other buildings . . . exceeding one thousand dollars shall hereafter be made in any national park except under express authority of Congress." (quoting 16 U.S.C. § 451 (1912))). At the time, federal parklands in D.C. were *not* part of the National Park System. *See* Exec. Order 6166 (June 10, 1933). So it appears that Congress enacted one rule for D.C.—no buildings without express authority of Congress—and another rule for national parks—no buildings over $1,000 dollars without express authority of Congress.[10]

---

[9] In fact, the post-enactment history cited by Defendants is consistent with the view that NPS has relied on congressional appropriations for construction authorization. Major Ulysses S. Grant III testified to the House Subcommittee on Appropriations in 1926 that § 8106 "has been never been construed to prevent such construction by the park authorities *within the limits of the appropriations*." Dist. of Columbia Appropriation Bill, 1927, Hr'g Before Subcomm. of H. Comm. on Appropriations 533, 69th Cong. (1926) (emphasis added). The transcript goes on to reflect that the buildings in question had, in fact, been presented to Congress and that Congress had appropriated funds for their construction. *Id.*

[10] Historical practice, including the way that Congress expressly *exempted* NPS from the prohibition in what Defendants argue was a comparable statute in 16 U.S.C. § 451, *see* Defs.' Renewed Opp'n at 22, suggests that NPS has never had a blank check under the NPS Organic Act to construct buildings, regardless of the source of funds.

23

The existence of a separate statute governing national parks does not mean, however, that § 8106 ceased to apply once federal parks in D.C. joined the National Park System in 1933. While Congress repealed 16 U.S.C. § 451 in 1996, Congress has never repealed 40 U.S.C. § 8106, and in fact recodified it in 2002. *See* Act of Aug. 21, 2002, Pub. L. No. 107-217, 116 Stat. 1062, 1206. The stronger reading of this history is that Congress means what it says! Congress has removed the threshold construction limitation applicable to NPS for national parks across the country, but has maintained § 8106's limitation on parks in the District of Columbia.

Undaunted, Defendants argue that NPS has erected "countless structures on national parkland" without "express congressional approval" and suggest as a result that the Court should read § 8106 as a dead letter. Defs.' Renewed Opp'n at 20. Unfortunately, that is not how statutory interpretation works—the Court must give effect to the unambiguous text of a statute even if there is contrary historical evidence. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("If we do our job of reading the statute whole, we have to give effect to this plain command, even if doing that will reverse the longstanding practice under the statute." (internal citations omitted)); *Exxon Mobil Corp.*, 545 U.S. at 568. In any case, it is not so clear that the structures identified by Defendants were built without Congress's knowledge or authorization.[11]

---

[11] For example, the National Capital Region Headquarters and U.S. Park Police Headquarters, *see* Defs.' Renewed Opp'n at 14, were constructed as part of Mission 66: a "ten-year project" "proposed . . . to Congress in 1955" and "funded by Congress." Mission 66: Birth of the Modern National Park, NPS (accessed Mar. 24, 2026), https://perma.cc/9VLT-C3V6; *see also* Act of June 13, 1956, Pub. L. No. 84-573, 70 Stat. 257, 262 (appropriating over $15 million for "construction . . . of buildings, utilities, and other physical facilities").

24

Finally, Defendants point to a handful of examples of construction at the White House since the enactment of § 8106 to argue that § 8106 does not apply to the White House. *See* Defs.' Suppl. Br. at 31. I disagree. Congress authorized the 1933 West Wing expansion and the 1942 East Wing expansion through general appropriations.[12] And to the extent President Ford's 1975 pool and President Trump's 2019 tennis pavilion are "building[s]" or "structure[s]," *see* 40 U.S.C. § 8106, they were never challenged in court, are not visible to the public, and were for the President's private use.[13] Without question, Defendants have never engaged in a construction project of *this* size and scale using donated funds. "This 'lack of historical precedent,' coupled with the breadth of authority that [Defendants] now claim[], is a 'telling indication' that [the ballroom] extends beyond [Defendants'] legitimate reach." *NFIB v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 119 (2022) (quoting *Free Enterprise Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010)). For these reasons, the National Trust is likely to succeed on its *ultra vires* claims under both 3 U.S.C. § 105(d) and 40 U.S.C. § 8106.[14]

---

[12] In 1933, Congress authorized a "comprehensive program of public works," including "construction, repair, and improvement of . . . public buildings." National Industrial Recovery Act, ch. 90, §§ 202, 220, 48 Stat. 195, 201, 210 (1933). One such construction project was the 1934 West Wing renovations. *See* Annex at 7–8. The National Trust suggests that funding for the 1942 construction of an expanded East Wing, including a secure underground bunker, came from a national-defense appropriation. *See id.* at 9; Sixth Supplemental National Defense Appropriation Act, 1942, 56 Stat. 226, 236 (providing funds for "public buildings and grounds in the District of Columbia").

[13] To be sure, the one statute that expressly cites 40 U.S.C. § 8106—the statute authorizing the construction of bonsai facilities at the National Arboretum, *see* Act of Oct. 21, 1993, Pub. L. No. 103-11, 107 Stat. 1046, 1051—does not fit neatly into the National Trust's narrative. Congress's practice of excluding construction projects from the scope of § 8106 has not been consistent. But nothing in the text of § 8106 requires Congress to cite § 8106 in authorizing legislation, and in any event inconsistent congressional practice cannot limit the clear text.

[14] Defendants argue that the National Trust's interests "are quite plainly beyond the zone of interests protected by" 40 U.S.C. § 8106, Defs.' Renewed Opp'n at 25, and therefore the National Trust's *ultra vires*

25

## B.    *Administrative Procedure Act*

Defendants have not been entirely consistent in this litigation as to which entities remain involved with the ballroom. Before the Court's denial of the National Trust's first motion for a preliminary injunction, Defendants represented that EXR was "managing the [ballroom] project under the President's direction," Defs.' Suppl. Br. at 3, and that NPS was "indisputably not directing the [ballroom] project," *id.* at 17 n.7; *see also id.* at 23. I went on to hold that the National Trust was not likely to succeed on the merits as to its APA claims because EXR was likely not an "agency" within the meaning of the APA. Mem. Op. at 13–16. The National Trust added claims arguing that shifting responsibility from NPS to EXR violated separation of powers and was *ultra vires*. *See* Second Am. Compl. ¶¶ 217–24. Both the Court and the National Trust were under the impression that, as Defendants themselves stated, NPS "had (and has) no role in directing the Project." Defs.' Suppl. Br. at 23; *see* Pl.'s Renewed Reply Br. at 16.

So it came as a surprise when Defendants' most recent brief invoked NPS's construction authority as an independent basis for denying the National Trust's motion. Defs.' Renewed Opp'n at 1. Indeed, it is difficult to understand how Defendants can rely on NPS's construction authority while claiming that NPS "had (and has) no role in

---

claims premised on that statute must fail. I find it unlikely that the zone of interests test applies here. *See Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 812 n.14 (D.C. Cir. 1987) (reasoning that parties "need not . . . show that their interests fall within the zones of interests of the constitutional and statutory powers invoked by the President in order to" bring *ultra vires* claims); *see also Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 48 (D.D.C. 2020) (whether the zone of interests test applies to *ultra vires* claims has not been resolved). If it were otherwise, litigants injured by *ultra vires* action would often be precluded from suit "since the litigant's interest normally will not fall within the zone of interests of the very statutory or constitutional provision that he claims does not authorize action concerning that interest." *Haitian Refugee Ctr.*, 809 F.2d at 812 n.14; *see also Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48.

26

directing" the ballroom project. Defs.' Suppl. Br. at 23. In a sleight-of-hand maneuver, Defendants argue that NPS chose to "contract" with EXR under the Economy Act, which would suggest that NPS is still involved with the ballroom project as a party to a contract, with EXR as its agent. *See* Defs.' Renewed Opp'n at 18. Therefore, in the alternative, to the extent that NPS is directing or otherwise involved in the ballroom project, the National Trust is likely to succeed on its claim under the APA that the ballroom construction is "contrary to law" in violation of 40 U.S.C. § 8106.[15]

Regarding Defendants' arguments about the NPS Organic Act, nothing in the text of the statute grants NPS blanket authority to engage in construction in national parks. The statute provides that NPS "shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units[.]" 54 U.S.C. § 100101(a). Such purposes are "conserv[ing] the scenery, natural and historic objects, and wild life in the System units" and "provid[ing] for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." *Id.* This general statement of purpose does not say anything about NPS's authority to construct buildings.

Instead, historical practice not surprisingly shows that Congress has given *limited* authority to NPS to construct by authorizing appropriations for those purposes. *See, e.g.,* Commerce, Justice, Science; Energy and Water Development; and Interior and

---

[15] The Court must evaluate any APA claims in the alternative to the National Trust's *ultra vires* claims, because if the National Trust is able to obtain "judicial review" via the APA, nonstatutory *ultra vires* review is not available. *See Changji Esquel*, 40 F.4th at 722 (quoting *Griffith*, 842 F.2d at 492).

27

Environment Appropriations Act, 2026, Pub. L. No. 119-74, 140 Stat. 5, 100.[16] Defendants identify a handful of structures built with donated funds in D.C. and argue that these were authorized by only the NPS Organic Act. Defs.' Renewed Opp'n at 18. Please! Even if these buildings were somehow comparable to the ballroom project, the available evidence strongly suggests that Congress was aware of these projects and at least indirectly authorized them.[17]

The NPS Organic Act is best read for what it is—a statement of NPS's general purposes. Defendants conflate taking actions "consistent with [NPS's] enabling legislation" with affirmative construction authorization. *See* Defs.' Renewed Opp'n at 16. Particularly in light of 40 U.S.C. § 8106's express prohibition, the broad language of the NPS Organic Act cannot supply the requisite authorization for construction of the ballroom.

## II. Irreparable Harm

To obtain injunctive relief, the National Trust must show that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. The threat of harm must be "both certain and great, actual and not theoretical, beyond remediation,

---

[16] Defendants do not purport to be relying on NPS's construction appropriation for the White House ballroom. In any case, NPS construction appropriations in recent years expressly limit the use of "National Park Service Donations" to "adjustments and changes *within the original scope of effort for projects funded by the National Park Service Construction appropriation.*" *See* Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25, 226 (emphasis added); *see also, e.g.,* 140 Stat. at 101 (same). So NPS cannot, in fact, use donations to construct buildings on national park lands outside the scope of construction appropriations. And it is highly doubtful that NPS could "contract" with EXR to avoid the limitations on NPS's construction authority.

[17] Defendants cite the new U.S. Park Police Stables on the National Mall as an NPS construction with donated funds. But it appears that *Congress* initiated this project. *See* Commemorative Works Clarification and Revision Act of 2003, Pub. L. No. 108-126, 117 Stat. 1349, 1353 (directing the Secretary of the Interior to produce a report "setting forth plans" for the "relocat[ion]" of "the National Park Service's stable and maintenance facilities").

and of such *imminence* that there is clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks omitted). Aesthetic and environmental injuries are typically "irreparable" because they are "seldom . . . adequately remedied by money damages" and are "often permanent or at least of long duration." *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 25 (D.D.C. 2009) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987)).

According to the National Trust, one of its members, Professor Alison Hoagland, is a longtime D.C. resident and a professor of historic preservation who regularly visits President's Park to "enjoy the historic buildings" and take in "the beauty of the L'Enfant Plan." Decl. of Alison K. Hoagland ("Hoagland Decl.") [Dkt. #2-3] ¶ 9. Hoagland also gives walking tours and has published scholarly articles on Washington's historic architecture, to which the White House is central. *Id.* ¶ 8. Hoagland alleges that construction of "a ballroom of the proposed form and scale" would cause "permanent and irreparable harm to the White House and President's Park," thereby damaging her own "aesthetic, cultural, and historical interests." *Id.* ¶¶ 13–14.

I previously concluded that these alleged aesthetic injuries established a substantial likelihood of Article III standing. *See* Mem. Op. at 7–13.[18] The National Trust's alleged

---

[18] Defendants urge the Court to revisit its standing analysis, *see* Defs.' Renewed Opp'n at 29–33, but I decline to do so. As I previously held, the National Trust has established a substantial likelihood of associational standing to challenge the construction of the ballroom, *see* Mem. Op. at 7–13, and I reincorporate that analysis today. Defendants offer two points in response, neither of which alter my conclusion. Defendants first argue that Hoagland cannot claim aesthetic injury from the ballroom because the new structure will "scarcely be seen from any public vantage point." Defs.' Renewed Opp'n at 29. That

29

aesthetic injury also establishes irreparable harm for purposes of a preliminary injunction. Hoagland has adequately described the "specific ways in which, in the absence of the injunction," her "interests in . . . [the] aesthetic . . . use and enjoyment" of the White House grounds "will be irreparably injured." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 324 (D.C. Cir. 1987); *see also, e.g.*, *Fund for Animals v. Norton*, 281 F. Supp. 2d 209, 220–22 (D.D.C. 2003) (aesthetic injury from hunting of mute swans sufficient for irreparable harm).

At the temporary restraining order stage in December 2025, I held that the National Trust had failed to demonstrate a "sufficiently imminent risk of irreparable harm" because below-grade structural work had just begun and Defendants' construction plans were still in flux. Mem. Order at 2–3. Things have changed. Above-ground construction will begin sometime in April 2026. Stanwich Decl. ¶ 20. Moreover, the design plans are nearly final. On February 27, 2026, the Commission of Fine Arts approved the ballroom's concept design submission as a "final design." *See* T. Luebke to J. Fisher, CFA 19/FEB/26-1, https://perma.cc/CV2F-VE6M (cited in Martin Suppl. Decl. ¶ 6). On March 5, 2026, Defendants submitted "preliminary and final site and building plans" to the National

---

is pure fiction. Defendants' own renderings show that the proposed ballroom will be clearly visible from Lafayette Park, *see* Exec. Director's Recommendation at 17–18, Nat'l Cap. Planning Comm'n (Mar. 5, 2026), https://perma.cc/4LFC-YDEJ (cited in Martin Suppl. Decl. ¶ 7), and even from the steps of the U.S. Capitol, *id.* at 23; *see also* Finding of No Significant Impact [Dkt. #14-2] at 6 (ballroom will "creat[e] a visual imbalance"). Defendants further argue that Hoagland's injury is not germane to the National Trust's purposes, which, Defendants insist, relate only to the acquisition of property for preservation and exclude the White House. Defs.' Renewed Opp'n at 31–33. "The bar for germaneness, however, is low." *AARP v. EEOC*, 226 F. Supp. 3d 7, 19 (D.D.C. 2016). To clear the bar, an organization need only show "a mere pertinence between [the] litigation subject and [the] organization's purpose." *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 111 (D.C. Cir. 1990) (internal quotation marks omitted). For the reasons articulated in my prior opinion, the National Trust has easily done so here. *See* Mem. Op. at 12.

Capital Planning Commission ("NCPC").   Martin Suppl. Decl. ¶ 7.   The NCPC is scheduled to vote on the project at its April 2, 2026 meeting.  *Id.*  And once complete, the building's foundation could accommodate only "modest changes" to the size and scale of the structure.  Decl. of Prof. Engineer [Dkt. #30-4] ¶ 10.

As such, the National Trust has demonstrated that injuries to its "aesthetic, cultural, and historical interests" are "imminen[t]," "certain," and "great" absent a preliminary injunction.  *Mexichem*, 787 F.3d at 555 (typeface altered).  If construction continues, the harm of an enormous ballroom overshadowing the White House grounds would indeed be "permanent."  *Brady Campaign*, 612 F. Supp. 2d at 25.  Moreover, the harm will likely materialize "before a decision on the merits can be reached."  *Nat'l Parks Conservation Ass'n v. Semonite*, 282 F. Supp. 3d 284, 288–89 (D.D.C. 2017).[19]  Above-ground construction begins in a matter of days, and continued construction will only further lock in the size, scale, and styling of the proposed building.

Defendants contend that the National Trust faces no imminent aesthetic harm because Hoagland "will not be able to see any part of the East Wing for many months." Defs.' Renewed Opp'n at 35.  But Defendants cannot seriously argue that Hoagland has no claim for imminent aesthetic harm until the completed building is fully visible.  Once the

---

[19] As the National Trust points out, the *Semonite* case is a cautionary tale.  The *Semonite* plaintiffs sought to enjoin construction of seventeen electrical towers over a river.  One of my colleagues found no irreparable harm because the project was still in its infancy and therefore denied injunctive relief.  *See* 282 F. Supp. 3d at 289.  After construction was completed, the court found in plaintiff's favor on the merits but concluded that the towers were too costly to remove and, therefore, no injunctive relief was available.  *See Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 94, 100–01 (D.D.C. 2019).  If I deny preliminary injunctive relief now and allow construction to continue while the case progresses, any eventual victory on the merits for the National Trust may likewise prove to be too little, too late!

31

building is complete, any aesthetic harm would be "beyond remediation," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006), and courts typically find challenges to completed projects to be moot, *see Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 62 F. Supp. 3d 1, 5 (D.D.C. 2014) (noting lack of cases where courts "ordered a defendant to dismantle a completed construction project"). The National Trust need not wait until the last brick is laid to obtain injunctive relief.

## III.    The Balance of the Equities and the Public Interest

The National Trust finally must show that "the balance of equities tips in [its] favor," and that "an injunction is in the public interest." *Winter*, 555 U.S. at 20. When, as here, "the Government is the opposing party," these final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (D.C. Cir. 2022).

Here too, the National Trust has carried its burden. It has demonstrated imminent, irreparable harm in the form of ongoing construction of a ballroom that would, in its own words, "overshadow[]" the White House and disrupt the appearance of a historic and cultural icon. *See supra* Part II. The National Trust has shown that Defendants are making these irreversible changes without statutory or constitutional authority. While the National Trust would be deeply harmed in the absence of an injunction, the Government "cannot suffer harm from an injunction that merely ends an unlawful practice." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

The public interest, too, weighs in favor of enjoining this project pending approval from Congress. Congress is the collective voice of the American people in our system of

32

government, *see Learning Res.*, 146 S. Ct. at 672 (Gorsuch, J., concurring) (Congress reflects "the combined wisdom of the people's elected representatives, not just that of one faction or man"), and the Constitution *itself* vests authority over federal property, including the White House, in Congress! *See* U.S. Const. Art. I, § 8, cl. 17; *id.* Art. IV, § 3, cl. 2; *cf. Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 289–90 (1984) (noting that federal parkland in Washington, D.C. and around the White House are a "unique resource[] that the Federal Government holds in trust for the American people"). After all, the White House does not belong to any one man—not even a president!

Defendants predictably object, arguing that any delay to construction would imperil national security and expose the White House to damage. Grasping for straws, Defendants call the construction site a "coordinated and managed safety hazard" that has disrupted existing security procedures. *See* Decl. of Matthew C. Quinn [Dkt. #30-5] ¶ 8. Thus, according to Defendants, any construction delay will undermine national security. Please! While I take seriously the Government's concerns regarding the safety and security of the White House grounds and the President himself, the existence of a "large hole" beside the White House is, of course, a problem of the President's own making! Defs.' Renewed Opp'n at 34. Bald assertions of "national security" cannot excuse the Government's failure to follow the law and then insulate those failures from judicial review.[20]

---

[20] The Court has reviewed the classified *ex parte* declarations submitted by Defendants. *See* Mot. for Leave to File Decl. *Ex Parte* [Dkt. #13]; Not. of Lodging Suppl. *Ex Parte* Decl. [Dkt. #25]; Not. of Lodging Second Suppl. *Ex Parte* Decl. [Dkt. #40]; Not. of Lodging Third Suppl. *Ex Parte* Decl. [Dkt. #59]. Based on my review, I do not find that an injunction halting construction would in any way jeopardize national security. *But see TikTok Inc. v. Garland*, 604 U.S. 56, 74 (2025) (Gorsuch, J., concurring) ("Efforts to inject secret evidence into judicial proceedings present obvious constitutional concerns.").

I acknowledge that this case raises novel and weighty issues, that halting an ongoing construction project may raise logistical issues, and that Defendants intend to seek an appeal immediately. I will therefore delay enforcement of the injunction for fourteen days, as described in the attached Order.[21] I will also exclude construction necessary to ensure the safety and security of the White House from the scope of the injunction.[22]

## CONCLUSION

Where does this leave us? Unfortunately for Defendants, unless and until Congress blesses this project through statutory authorization, construction has to stop! But here is the good news. It is not too late for Congress to authorize the continued construction of the ballroom project. The President may at any time go to Congress to obtain express authority to construct a ballroom and to do so with private funds. Indeed, Congress may even choose to appropriate funds for the ballroom, or at least decide that some other funding scheme is acceptable. Either way, Congress will thereby retain its authority over the nation's property and its oversight over the Government's spending. The National Trust's interests in a constitutional and lawful process will be vindicated. And the American people will benefit from the branches of Government exercising their constitutionally prescribed roles. Not a bad outcome, that!

---

[21] The Court gives fair notice to Defendants, however, that any above-ground construction over the next fourteen days that is not in compliance with my Order is at risk of being taken down depending on the outcome of this case.

[22] I decline to exercise my "broad discretion" to require the National Trust to post a bond. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).

34

35

For the foregoing reasons, it is hereby **ORDERED** that the National Trust's Motion for a Preliminary Injunction [Dkt. #51] is **GRANTED**. An accompanying order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge

35

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES**, <br><br> *Plaintiff*, <br><br> v. <br><br> **NATIONAL PARK SERVICE**, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-4316 |

## NOTICE OF CONDITIONAL CROSS-APPEAL

Notice is hereby given that Plaintiff National Trust for Historic Preservation in the United States (the "National Trust") conditionally cross-appeals to the United States Court of Appeals for the District of Columbia Circuit from the Opinion and Order denying the National Trust's first motion for a preliminary injunction (ECF Nos. 47, 48), entered by this Court on February 26, 2026.

In its Opinion and Order, the District Court held that the National Trust was unlikely to succeed on its constitutional claims. The District Court also did not enter a preliminary injunction on the National Trust's Administrative Procedure Act claims. The District Court, however, granted the National Trust leave to amend its complaint, and subsequently entered a preliminary injunction in the National Trust's favor via an Opinion and Order issued on March 31, 2026. *See* ECF Nos. 60, 61. The government has since appealed that preliminary injunction ruling. *See* ECF No. 62.

The National Trust therefore files this conditional cross-appeal of the February 26, 2026 Opinion and Order to protect its rights in the event that the United States Court of Appeals for the District of Columbia Circuit reverses, vacates, or otherwise declines to affirm the March 31, 2026 Opinion and Order.

Case 1:25-cv-04316-RJL    Document 67    Filed 04/08/26    Page 60 of 61

Dated: April 8, 2026

Respectfully submitted,

NATIONAL TRUST FOR HISTORIC
PRESERVATION IN THE UNITED STATES

By its attorneys,

*/s/ Gregory B. Craig*
Gregory B. Craig (164640)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Tel: (202) 223-1200

Thaddeus A. Heuer (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Jack C. Smith (1725229)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel: (617) 832-1000

2

## CERTIFICATE OF SERVICE

I certify that on April 8, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent via first class mail to those indicated as non-registered participants.

*/s/ Gregory B. Craig*